May it please the Court, I am representing Spherix in this appeal. The law and the Patent Office rules impose certain requirements on an IPO hedge. For example... I'm sorry, can you speak up? Sure. The law and the Patent Office rules impose certain requirements on an IPO hedge. For example, a petition may be considered only if the petition identifies in writing and with particularity each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge. Further, and this is from 35 U.S.C. 312A3, in addition, each petition must include a full statement of the reasons for the relief requested. Okay, we know what the IPRs, how they operate, so what is it that you think is your best argument here with respect to alleged errors by the Board? Well, the first error that the PTAT made, and probably the most serious one, is that the petitioner did not satisfy these rules that I just started reading and you're already familiar with. Instead, the petitioner, for the means plus function, there were two means plus function claim limitations. The petitioner merely recited the claim language for the first and second process of means in one column of the table and provided quotations from one reference, Martinson, in the other column of the chart. Now, I've done over 200 IPRs, and before I did all of these IPRs, I was a judge at the PTAT, and I was at the PTAT for three years. And I can honestly say I've never seen an IPR like this. It's not normal. For instance, I wasn't involved in an IPR last year, which was- I mean, the petitioner here, when it filed the petition, didn't understand these to be means plus function claims. So why would it put means plus function analysis in its petition? Right, because you said they weren't means plus function claims initially. No, I don't think- At the district court. At the district court, they initially said, well, this is a very big difference. At the district court, which preceded the filing of the IPR, the petitioner said they were means plus function claims. Right, but the petitioner went to the IPR and said, okay, we'll buy the patent owner's contention that they're not means plus function claims. And then you went to the IPR- I mean, I don't think this is your best argument. You went to the board and said, no, that now the district court, in a very thorough opinion, says they're means plus function claims, so now we want you to call them means plus function claims. So how could you have been surprised by the means plus function analysis that the board later engaged in, or surprised that they didn't hold that against the petitioner for not including means plus function analysis in their petition? Well, the petitioner has the burden to show that the claims are unpatentable. So it has- I guess here's the problem. I'll try to simplify it even more. They allege in the petition that they're not means plus function claims, and that they're invalid. You come back and say, no, they're means plus function claims. Why would it be wrong for them in the reply brief to say, well, even if you treat them as means plus function claims, they're still invalid? Even if we accept the petitioner- why would that be problematic in a reply under IPR rules? Because you're the one who alleged your response was they are means plus function, for them to say, either way, they're invalid. Why isn't that proper reply? Because in a reply, a reply isn't, as I indicated in the brief, a reply isn't intended to establish a prima facie case of obviousness. And in order to establish a prima facie case of obviousness of a means plus function claim limitation, you have to identify the function, and you have to identify- But what if you legitimately don't think they're means plus function claims? You don't have to have some kind of second sight that the patentee is going to argue they're means plus function, and the board's going to agree with them if you think they're not means plus function claims. Especially when the patentee argued they weren't at the district court. The patentee argued they weren't, and then there was- I didn't have a district court case, nor was I involved in the IPR. I'm just doing the appeal. But what the patent owner did was at least rational. The patent owner said, we don't think, initially, at the district court, they're means plus function claims. And if the district court says you're wrong, they are means plus function claims. Why is it what the petitioner did equally rational? Because you were arguing in the district court that these weren't means plus function claims. So when it goes to the patent office, it doesn't want to take the chance that the district court says they're not means plus function. So it says they're not. They're still invalid. But then when you come back and switch your position, they say, well, again, even under that, they're still invalid. But I think in this case, if you look at the timeline, the patent owner switched its position after the district court said you're wrong. You know what? The switching the position is not going to get you anywhere because you switched your position too. Twice. And also, forget about all that. The board ultimately said, we observed at the outset that this claim construction determination does not affect the patentability determination with regard to claims 1 to 7 and 18. So even after recognizing your argument that the reply brief improperly moved to a different claim construction, you know, recognizing that you made that argument, not necessarily agreeing with it, but recognizing you made it, the board said, either way, we come out the same way on patentability. So it wouldn't have affected us. So why then, how can you complain about process when at the end of the day, the board said under either construction, they would come to the same conclusion? It's harmless error at best at that point. Whatever they added in the reply brief is at best harmless error if the board said they would have found against you under either construction. I don't think it's harmless error because, for example, if the petition would have included an appropriate means plus function analysis, we could, and this is the way it's supposed to work. Then the patent owner says what's wrong with it and why they disagree with certain aspects. Now in this case, even if you look at the reply, we don't think the reply should be considered because we don't think a reply is the proper place to put a prima facie case of obviousness. But even if it were considered, it's still lacking. If you look at the reply, which is in the appendix, it doesn't identify the function, it doesn't identify the corresponding structure, and it doesn't say where in the prior art these items from the corresponding structure can be found. So even in the reply, there isn't a fundamental prima facie case of obviousness for why these means plus function claim limitations are not. And it didn't come out until the final written decision when the board put in a means plus function claim construction that I believe is correct for the reasons I indicated in the appeal brief. It wasn't until the final written decision that we received something that should have been in the petition. And even the final written... So what should they have done? Just file a new petition? I'm sorry. Should they have filed a new petition? Well, I'll tell you what was done in the other case that I referred to. I pointed out representing the patent owner, that's a means plus function claim, there's no means plus function analysis. This is not a prima facie case of obviousness, you should get rid of it. And the board in that case did get rid of it. They said as I'm quoting, petitioner did not provide the proper analysis for any of the means plus function limitations. That is, the petitioner did not identify the specific portions of the specification that describe the structure, material, or acts corresponding to each claim function, let alone show how the prior act teaches such structure. When a petition does induce that for means plus function limitations, then it should not be, the IPR should not be instituted on the means plus function. What makes you think the board actually adjudicated these as means plus function claims? I read the board opinion as being quite equivocal at best, saying they basically lay out both and say whether they're means plus function or regular, your claims are unpatentable. And so they say for convenience, we'll give you the district court's claim constructions. But I actually don't see the board as adopting the district court's claim construction. I see the board as sort of waffling, which I don't love. But under this circumstance where either way you lose, I don't know how you win. Okay, I'll tell you how we win. Because I looked at the means plus function analysis in the final written decision, which I think it's kind of late to put the analysis for the first time that's at least legitimate in the final written decision. But I don't think they adopted a means plus function analysis, do you? I mean, look at pages 18 and 19. Did the board say, we treat these claims as means plus function and therefore find the claims to be invalid? Well, I think like you said, they were waffling, which to my mind, judges are supposed to make judgments. That's why the judges still have not yet. No, no, no, no. You used to be a judge yourself. You know, if you can kill a claim in five different ways, you don't have to actually go through all of them. You can say, this thing is dead. You know, just like on appeals, sometimes I can say, listen, I don't have to decide whether this is means plus function or not, because either way, this claim is dead. So what else do you think that they did wrong? I think it's clear that they are means plus function claims. I have a section in the appeal brief for why they're means plus function claim limitations. In addition, the district court's reasoning for why they're means plus function claim limitations is in the appendix. So I think it's clear at this point that everybody knows they're means plus function claim limitations. And even when you look at the final written decision, there's limitations that are missing. There's components in the corresponding structure from the patent that are missing from the prior argument. OK, which ones? The EEPROM is missing. That's a component that was identified in the structure of the district court's claim construction. And it was also included in the final written decision for the very first time in the process. The NVRAM is also missing, and the bidirectional data bus is missing. Now, there's missing components, but that doesn't even get them to first base. It's not sufficient to say that a means plus function claim limitation is obvious, even if the prior art had contained all of the components. You have to show that there's structure in the way that it's described in the patent, because that's the corresponding structure. But they weren't even able to identify all of the components in the corresponding structure. Never mind get to the ultimate decision that does the prior art teach or suggest that all of the components that are in the corresponding portion of the specification, the corresponding structure, are in the prior art. So, there's components that are missing. And so, if there's components that are missing, how could they possibly show that the corresponding structure is obvious in light of the prior art that doesn't even have the components? Did they cite to Dr. Franzen's testimony before the district court? But Dr. Franzen did not, at that point, they weren't talking about a means plus function obviousness analysis. So, that wasn't complete. But he said one of ordinary skill would have been able to derive the claims from the claims alone, the structures for performing the corresponding functions. Didn't he say that? I think he did say that. I think he was arguing why there would be a support in the specification for the claims. But there's no, I think, to do a means plus function analysis and to reach a conclusion that a means plus function limitation is obvious in light of the prior art. Such sweeping statements out of context are not sufficient. Rather, you have to identify the function in the means plus function limitation. You have to identify all of the components in the corresponding structure that's in the prior art, has those components arranged as they are arranged in the specification of the patent. That is what's necessary in order to find the means plus function claim limitation to be obvious. And that wasn't there throughout, even at the last thing that the PTAB does is to issue a final written decision. And even the final written decision doesn't identify all the components in the prior art that is in the corresponding structure of the specification. Well, do you think it was inappropriate for the PTAB to consider Dr. Franzen's testimony before the district court? It was in the record before them, right? It's in the record, but Dr. Franzen's testimony is not sufficient to show that these two means plus function claim limitations are obvious because the testimony doesn't identify all the components which are in the structure that corresponds to the function that's recited in the means plus function element. Nor does he indicate that these components are arranged as they are arranged in the structure as described in detail in the patent. What else do you think the court got wrong? Oh, so there's two claim limitations that are issued in this appeal. One is, well, there's two groups. One is the first and second processor means, which we've just been discussing. And the second is concurrently transmitting the alphanumeric data and commands to the base station. And for that claim limitation, we believe that the PTAB's claim construction is not correct. And we believe under the correct claim construction that there's not sufficient evidence in the record to show that the prior art meets that limitation. And if you can turn to the patent, claim one, I can explain it to you. It's at appendix 69. Claim one starts at the bottom of the right-hand column. And it goes on to column 13, which is on the next page. So the particular claim limitation, which is not taught or suggested by the prior art, is on the top of column 13. Concurrently transmitting the alphanumeric data and commands to the base station. So this isn't that complicated. You look at the phrase alphanumeric data. You see that the word the precedes it. So then you're thinking, well, alphanumeric data, what alphanumeric data is it referring to? And if you go to the previous page, it tells you what it's referring to. It says generating alphanumeric data from selected ones of key operations at the handset. So the phrase from column 13, concurrently transmitting the alphanumeric data and commands to the base station, in light of the previous limitation that I just read to you, requires concurrently transmitting the alphanumeric data generated by keystroke operations at the handset and commands to the base station. So just any alphanumeric data is not sufficient to meet this claim limitation. Rather, there has to be concurrent transmission of alphanumeric data, a particular type of alphanumeric data. The alphanumeric data that was generated by keystroke operations at the handset. And the board found that Martinson disclosed that at 835. The board found that. So what's erroneous about that? The board found Martinson disclosed exactly that. Just getting to the proper page in my notes. Okay, the board came up with a scenario, you were right, I read that portion of the final written decision, where they felt that if it were used in that scenario, it would meet the claim limitation. But there's really... I'll read the board scenario. You don't need to read it, we're all on it. Okay, okay. But the mere selection... So the board is saying that, well, if somebody has a handset and they're scrolling through telephone numbers and they press it to hit the talk key, then that means that this claim limitation is met. But that does not mean the claim limitation was met. Because the mere selection of one of a group of phone numbers at a handset, as disclosed in Martinson, that had been stored at the base station, does not teach transmitting the alphanumeric data that had been previously generated. When they hit talk, it has to transmit to the base station an identification of what number to call. It doesn't have to transmit the phone number, but whether I have speed dial and whether my speed dial is Billy, my son's name, and I click Billy, it transfers Billy to the base station, and the base station knows that Billy is associated with a particular number. So maybe all I've sent is Billy. In the scrolling, maybe all they sent is a 1 or a 2 or a 3 corresponding to the speed dial punch button number, but that's still alphanumeric data. Whether it's the name Billy, or it's a 1, a 2, a 3, they don't have to send the phone number back. It just has to send back alphanumeric data. In fact, the fact that it's called alphanumeric, what it's plain face means is not necessarily the phone number because the alpha part would fall away if it was. So all you know is you scroll down and hit talk. It doesn't automatically call. It has to send the signal back to the base station, and it has to identify which number to call. It may not be by phone number, but it's by some identifying characteristic, and that's alphanumeric. I think we both agree it wouldn't send the phone number to the base station because the phone number is already at the base station, and that would be wasteful. But it has to send something. To identify which phone number. But there's something that has to be concurrent transmission of two phones. Of that information plus the talk command. That's enough. Well, I think that it- It's under a substantial evidence standard for me to review the board's decision on what it referenced. It seems like enough to me. Well, I would think that would just be one command and not both the command and the alphanumeric data. And then alphanumeric data, what was alleged to be the alphanumeric data by the petitioner was the phone number and not just some indication. Okay. Okay, do you have anything further? Because we are way over our time. I know, Your Honor. Thank you very much. Okay. Thank you. The case is taken under submission. All rise. The honorable court is adjourned until tomorrow at 4 a.m.